UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,

        -against-

ALVARO CABRAL,

                      Defendant.
----------------------------------X
ALVARO CABRAL,

                Petitioner,

        -against-

UNITED STATES OF AMERICA,

                     Respondent.
----------------------------------X

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  FEB 0 5 2021  ★

LONG ISLAND OFFICE

MEMORANDUM & ORDER
12-CR-0336-2(JS)

19-CV-4829(JS)

APPEARANCES
For United States:    Nicole Boeckmann, Esq.
                      Christopher C. Caffarone, Esq.
                      United States Attorney's Office
                      Eastern District of New York
                      610 Federal Plaza
                      Central Islip, New York 11722

For Defendant/
Petitioner:            Alvaro Cabral, pro se
                      56830-018
                      U.S. Penitentiary Lompoc
                      3901 Klein Boulevard
                      Lompoc, California 93436

SEYBERT, District Judge:

       Defendant/Petitioner Alvaro Cabral ("Defendant"), who is proceeding pro se, has filed two motions seeking collateral relief from his term of incarceration.  First, Defendant petitions this Court to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 (the "Petition").  (Pet., ECF No. 173; Suppl. Pet., ECF No.

181; Pet. Reply, ECF No. 192.)    Separately, Defendant seeks a reduction of his sentence, pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), in light of certain underlying health conditions and concerns surrounding the COVID-19 pandemic (the "Motion").  (Mot., ECF No. 199.)  The Government opposes both the Petition and the Motion.  (Gov't Pet. Opp., ECF No. 189; Gov't Mot. Opp., ECF No. 212.)  For the reasons set forth below, the Petition and the Motion are DENIED.

BACKGROUND

I.    The Underlying Crimes[1]

Defendant was a member of the Central Islip chapter of the Ñetas street gang.  In early 2004, the Ñetas Central Islip chapter was feuding with the Latin Kings, a rival street gang.  On August 10, 2004, as the feud was ongoing, Defendant, with co-defendants Jason Cabral ("Jason") (Defendant's brother and the leader of the Central Islip chapter), Stephanie DiCarlo, Luis Benitez, and Arthur Sullivan (collectively, "Defendants"), hatched a plan to rob Anthony Marcano, a junior member of the Latin Kings. Defendants lured Marcano, joined by Fabian Mestres (another junior Latin Kings member), to one of their homes under the guise of a drug deal.  Once inside, Defendant, and others, wielded guns and

---

[1] The facts are drawn from the Superseding Indictment and the Presentence Investigation Report ("PSR") that the Court adopted, as amended, during sentencing. (PSR, ECF No. 104, ¶¶ 2-14; Sent'g Min. Entry, ECF No. 126.)

beat and bound Marcano and Mestres (the "Victims") with duct tape while DiCarlo and Jason waited in a car down the street. Defendants also stole the Victims' drugs, money, and jewelry. Jason then ordered Defendant and Benitez to kill the Victims.

Defendants, and others, moved the Victims, who were still alive and bound, to the trunk of Marcano's car. Defendant and Benitez drove the car to an abandoned warehouse in Queens, New York, while DiCarlo and Jason followed as a "measure of protection" in the event they were stopped by the police. For example, Jason notified Benitez and Alvaro that the Victims caused the taillight to blink. After arriving at the warehouse, Marcano and Mestres were ordered to their knees and Benitez, who wanted to "spare" Defendant, shot and killed both Victims, execution style.[2] Defendants left the Victims in the warehouse parking lot where they were found the following day. Jason directed Defendant and others to sell Marcano's car to an associate in exchange for marijuana. Defendant also accompanied DiCarlo to pawn the Victims' stolen jewelry for at least $1,000.

## II.  Defendant's Guilty Plea

Defendant remained at liberty for several years when, on or around May 10, 2012, a grand jury charged him for his involvement in the murders. (Indictment, ECF No. 1.) The Court

---

[2] As discussed below, at sentencing, Defendant maintained that he refused to shoot the Victims.

appointed counsel (ECF No. 15) and on June 8, 2012, Defendant was arraigned and detained (Min. Entry, ECF No. 17; Order of Detention, ECF No. 18).  As relevant here, on April 4, 2013, the Government filed a Superseding Indictment charging Defendant, with others, with two counts of murder, in violation of 18 U.S.C. §§ 1959(a)(1), 2 and 3551 et seq. (Counts One and Two), and two counts of firearm-related murders, in violation of 18 U.S.C. §§ 924(j)(1), 2 and 3551 et seq. (Counts Three and Four).  (See Superseding Indictment (S-2), ECF No. 71.)  On February 3, 2014, Defendant pled guilty to Counts Three and Four of the Superseding Indictment pursuant to a plea agreement with the Government.[3]  (See Min. Entry, ECF No. 91; Plea Agmt., ECF No. 189-1; Plea Tr., ECF No. 189-2.)  As part of the plea agreement, Defendant agreed that he would not appeal or otherwise challenge his conviction or sentence if the Court sentenced him to a term of imprisonment of thirty (30) years or below.  (Plea Agmt. ¶ 4.)

III. Defendant's Sentencing

Prior to sentencing, the Court reviewed the PSR and the parties' pre-sentencing submissions.  The PSR noted that Defendant grew up in an abandoned, broken, and abusive household; frequently

---

[3] Jason and DiCarlo were also parties to plea negotiations and entered guilty pleas at the same hearing.  Sullivan entered a guilty plea on August 5, 2013 and Benitez entered a guilty plea on November 7, 2013.

moved homes; and was regularly truant from school. (PSR ¶¶ 52-54, 57, 59, 65.) He began smoking marijuana at age nine and, during his teenage years, abused drugs (such as ecstasy, psychedelic mushrooms, and powder cocaine) and alcohol, although he later quit or limited his consumption. (Id. ¶¶ 54, 57-58, 78-82.)



Given the offense and Defendant's criminal history, the Guidelines provided for a term of life imprisonment and the Probation Department recommended a term of 40 years' incarceration. (PSR ¶ 106; Probation Rec., ECF No. 104-1, at 1.) Through counsel, Defendant submitted a lengthy pre-sentencing memorandum and argued for a 15-year sentence. (Def. Sent'g Br., ECF No. 114, at 1.) In support, Defendant detailed that he was "an impressionable and troubled 19-year-old with the emotional age

of a much younger teen ████████████████████████████



    On January 14, 2015, the parties appeared for sentencing. Prior to imposing its sentence, the Court acknowledged that Defendant was taking medication ████████ ████ ████████ ████████ (Sent'g Tr., ECF No. 189-3, at 3:2-19), adjusted Defendant's total offense level to 43 (id. at 5:22-6:8), and accepted the PSR's calculation of Defendant's Criminal History Category IV, without objection (id. at 6:9-7:8). The Court then heard Defendant's arguments regarding his age at the time of the crimes (id. at 14:15-22; 22:6-13) and mental health, ████████ ████████████████████████.

Defendant also requested a hearing to argue his "firm position" that he refused to shoot the Victims and to dispute the Government's narrative that Benitez opted to murder the Victims (thereby sparing Defendant from shooting). (Id. at 24:8-25:5.) The Court acknowledged that if Defendant rejected the opportunity to shoot the Victims, it would place him "in a less severe" category. (Id. at 26:11-21.) The Court contemplated a hearing and Defendant conferred with counsel. (Id. at 29:6-23.) After consultation, Defendant declined a hearing but disputed the representation that Benitez "spontaneously" elected to spare Defendant from shooting the Victims. (Id. at 30:4-9.) The Court agreed that Defendant did not pull the trigger but could not "assume that he said no" to the shootings. (Id. at 30:10-15; 31:3-12; 32:20-25; 34:7-19.) After additional arguments, Defendant "conceded" and declined a hearing on the issue. (Id. at 34:20-35:23.) The Court then sentenced Defendant to a term of 336 months' (28 years') incarceration, to be followed by five (5) years of supervised release. (Min. Entry, ECF No. 126; Sent'g J., ECF No. 127.) When delivering its sentence, the Court stated:

> It is not necessary for me to go through all the [3553(a)] factors because it is clear. I've considered them all . . . . [Defendant] didn't have any particular history of violence and it is rather shocking to see that he would do something like this at 19, that is, if you hadn't seen his prior family history and social ties . . . .

At nine years old he's smoking marijuana that might be laced with PCP, using all kind of drugs, he's truant, has all sorts of emotional problems because of the abandonment of his father and the abuse his mother suffered and it is just plain awful. You fast forward a number of years, a decade or so later and this nine[teen]-year old is begging his mother to live in the house. She said no, you and your girlfriend can live in a tent. That's pretty horrific, and I weigh that and I try to say how was this that he got to this point. And I look over at the other side of the room and I see these families.

\*\*\*

The rest is a community that has to be free from these gang activities. Based on everything I have before me, I will sentence the defendant to 28 years because that is fair, that is sufficient, and that, Mr. Cabral, is a tremendous break for you in the sense of what possibly the sentence could have been. That gives you the opportunity to finally attempt to deal with your mental conditions, attempt to deal with the various issues you will run around and find in jail and hopefully one day you'll be able to say I don't want a gang, I have my own family out there, I have people that care about me, but until you do I consider you to be really dangerous.

(Sent'g Tr. at 38:22-41:10.)

## DISCUSSION

On or around August 19, 2019, Defendant, pro se, moved the Court to vacate his conviction under Section 2255. (See Petition.) Defendant has also asked the Court to appoint counsel to assist with the Petition. (See ECF No. 182.) While the Petition

was pending, Defendant, <u>pro se</u>, filed his Motion for compassionate release. (<u>See</u> Mot.) The Court addresses each in turn.

I.    Defendant's Petition Pursuant to 28 U.S.C. § 2255

Defendant raises various grounds in support of his Petition: (1) the Court "should have reduced the Guideline offense by three levels to reflect his minor role and minimum participation" pursuant to Guidelines Amendment 794 (Pet. at ECF pp. 8-9, 21); (2) the Court failed to "adequately consider" Defendant's mental state at the time of the crime (<u>id.</u> at ECF pp. 9-10, 12, 22); (3) ineffective assistance of counsel at sentencing (<u>id.</u> at 11); and (4) his Section 924(j) convictions must be vacated under <u>United States v. Davis</u>, 139 S. Ct. 2319 (2019) (<u>see generally</u> Suppl. Pet.). The Government opposes the Petition on various procedural grounds and substantive grounds. (<u>See</u> Gov't Pet. Opp., ECF 189.) As explained below, the Court denies the Petition.

    A. Legal Standard

To obtain relief under Section 2255, a petitioner must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." <u>Cuoco v. United States</u>, 208 F.3d 27, 30 (2d Cir. 2000) (internal quotation marks and citations omitted). A petitioner must also show that the error had "substantial and injurious effect" that caused "actual prejudice." <u>Brecht v.</u>

9

<u>Abrahamson</u>, 507 U.S. 619, 637 (1993) (internal quotation marks and citations omitted); <u>Underwood v. United States</u>, 166 F.3d 84, 87 (2d Cir. 1999) (applying <u>Brecht</u> to a Section 2255 motion).

To "obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." <u>United States v. Frady</u>, 456 U.S. 152, 166 (1982). A court must exercise its discretion sparingly because Section 2255 applications "are in tension with society's strong interest in the finality of criminal convictions." <u>Elize v. United States</u>, No. 02-CV-1530, 2008 WL 4425286, at *5 (E.D.N.Y. Sept. 30, 2008) (internal quotation marks and citation omitted); see also <u>Brecht</u>, 507 U.S. at 633-34.

B. <u>Analysis</u>

1.   <u>Defendant's Collateral Attack Waiver</u>

The Government argues that the Petition must be denied because Defendant waived his right to collaterally attack his plea or sentence under the plea agreement. (Gov't Pet. Opp. at 12-13.) With the exception of his <u>Davis</u> claim, the Court agrees.[4]

"A defendant's knowing and voluntary waiver of the right to . . . collaterally attack his conviction and/or sentence is

---

[4] The Court does not consider the Government's remaining procedural arguments because, as explained below, the Petition is without merit. See <u>Abrue v. United States</u>, No. 16-CV-5052, 2020 WL 4570338, at *2 (S.D.N.Y. Aug. 7, 2020) (declining to consider the Government's procedural arguments where court determined a Section 2255 petition failed on the merits).

enforceable." <u>Sanford v. United States</u>, 841 F.3d 578, 580 (2d Cir. 2016) (<u>per curiam</u>). In the Petition, Defendant does not argue that that his waiver was unknowing or involuntary. <u>See Garcia-Santos v. United States</u>, 273 F.3d 506, 508 (2d Cir. 2001) (<u>per curiam</u>) (affirming that an appeal waiver was knowing and voluntary where a petitioner failed to claim that he did not understand the waiver in a plea agreement); <u>Elliott v. United States</u>, No. 17-CR-0127, 2019 WL 6467718, at *4 (E.D.N.Y. Dec. 2, 2019) (finding, where petitioner did not "argue that his waiver was not knowing or voluntary," "waiver of the right to bring a § 2255 petition is enforceable"). On this basis, Defendant's waiver of his right to bring a Section 2255 petition is enforceable. It is unlikely that he can argue otherwise given that, here, the Court "thoroughly questioned [Defendant] about his Plea Agreement, ensuring [he] had discussed the Agreement with his counsel and understood it, including that he was waiving certain rights, among which was the right to collaterally challenge the sentence the Court would impose upon him[.]" <u>United States v. Baig</u>, No. 13-CR-0351, 2020 WL 4607662, at *4 (E.D.N.Y. Aug. 11, 2020); (<u>see</u> Plea Agmt. ¶ 4; <u>see also</u> Plea Tr. at 14:16-20.) Before accepting the guilty plea, the Court conducted a "Criminal Rule 11 allocation of [Defendant], ensuring that [he] was knowingly and voluntarily pleading guilty." <u>Baig</u>, 2020 WL 4607662, at *4. Therefore, the collateral attack waiver is valid.

Moreover, Defendant does not argue "that he received ineffective assistance of counsel in entering the plea agreement. Rather, [he] challenges counsel's failure to raise certain arguments after the plea agreement was effectuated." Patterson v. United States, No. 16-CV-1052, 2020 WL 3510810, at *8 (D. Conn. June 29, 2020) (emphasis added); (see Discussion, infra.) As such, because the Court sentenced Defendant to 336 months' (28 years') of incarceration, below the thirty (30) year threshold he agreed to in the plea agreement, "the collateral attack rights waiver precludes his attempt to seek relief under Section 2255, and his remaining claims [other than that based on Davis] and his challenges to his sentence are dismissed as procedurally barred." Cisneros v. United States, No. 16-CR-0069, 2020 WL 6585971, at *7 (W.D.N.Y. Nov. 10, 2020) (citations omitted); Rodriguez v. United States, No. 16-CV-1784, 2019 WL 5552325, at *4 (D. Conn. Oct. 25, 2019) ("Because [the defendant's] sentence did not exceed the waiver's thresholds, and because [the defendant's] ineffective assistance of counsel claim relates to counsel's conduct after he made a knowing and voluntary plea, the waiver forecloses his collateral attack.").

However, in an abundance of caution, the Court considers the merits of the Petition.

2.    The *Davis* Claim

As stated, Defendant's waiver is not enforceable to the extent the Petition is based on the Supreme Court's decision in *Davis*.   See *Jacques v. United States*, No. 07-CR-0844, 2020 WL 5981655, at *3 (E.D.N.Y. Oct. 8, 2020) (Seybert, J.) (noting that courts in this Circuit are divided as to whether a plea agreement waiver bars a *Davis* challenge and declining to enforce a waiver provision where the "[p]etitioner challenge[d] the constitutionality of his underlying conviction as a result of the Supreme Court's *Davis* decision") (collecting cases).

In *United States v. Davis*, the Supreme Court invalidated Section 924(c)(3)(B), referred to as the "Residual Clause," as unconstitutionally vague.   See generally 139 S. Ct. 2319 (2019); see 18 U.S.C. § 924(c)(3)(B) (defining a crime of violence under the Residual Clause as an offense "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense"). However, a conviction under Section 924(c) remains valid if the predicate offense is a "crime of violence" under the Section 924(c)(3)(A), the "Elements Clause."   An offense is a "crime of violence" under the Elements Clause if it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."   18 U.S.C. § 924(c)(3)(A); see, e.g., *Figueroa v. United States*, No. 16-CV-4469, 2020 WL

2192536, at *2 (S.D.N.Y. May 6, 2020) (finding kidnapping as a predicate offense for a Section 924(c) conviction does not qualify as a crime of violence under the Elements Clause "because the [kidnapping] statute can be violated without the use of force").

Here, the Davis claim fails because the relevant predicate offenses qualify as "crime[s] of violence" under the Elements Clause. Specifically, Defendant pled guilty to, and was convicted for, Counts Three and Four of the Superseding Indictment: the firearm-related murders of the Victims in violation of 18 U.S.C. § 924(j) ("Section 924(j)"). Section 924(j) makes it a crime to cause the death of a person in the course of a violation of Section 924(c). As charged, the Superseding Indictment defines the "crime[s] of violence" predicate offenses as: (1) the crimes charged in Counts One and Two (murder in aid of racketeering in violation of 18 U.S.C. §§ 1959(a)(1), 2 and 3551 et seq.); and (2) Hobbs Act robbery in violation of 18 U.S.C. § 1951(a). (See Superseding Indictment (S-2) ¶¶ 12, 14.)

Both offenses, murder in aid of racketeering and Hobbs Act robbery, qualify as crimes of violence under Section 924(c)'s Elements Clause. First, as for murder in aid of racketeering, it has long been established that:

> [M]urder, no matter the degree, entails a "use
> . . . of physical force" sufficient to trigger
> the elements clause of § 924(c); . . . .
> Therefore, because murder in aid of
> racketeering is a felony and one of its

> elements requires the use of physical force
> against another person, it qualifies as a
> "crime of violence" under the elements clause,
> not the residual clause, of § 924(c)(3).

United States v. Russell, No. 05-CR-0401, 2018 WL 3213274, at *3

(E.D.N.Y. June 29, 2018) (quoting Johnson v. United States, 599

U.S. 133, 140 (2010) (further citations omitted)); see also United

States v. Sierra, 782 F. App'x 16, 20-21 (2d Cir. 2019) (summary

order) ("murder is a crime involving the use of [physical] force").

Accordingly, murder in aid of racketeering qualifies as a "crime

of violence" under the Elements Clause.

Second, Hobbs Act robbery is also a "crime of violence"

under Section 924(c)'s Elements Clause.  In United States v. Hill,

the Second Circuit "agree[d] with all of the circuits to have

address the issue . . . and [held] that Hobbs Act robbery 'has as

an element the use, attempted use, or threatened use of physical

force against the person or property of another.'"  890 F.3d 51,

60 (2d Cir. 2018) (quoting 18 U.S.C. § 924(c)(3)(A)).  Although

Hill predates Davis, the Second Circuit has since reaffirmed Hill's

holding.  See United State v. Walker, 789 F. App'x 241, 245 (2d

Cir. 2019) (summary order) (holding that "[o]ur prior holding in

[Hill], that substantive Hobbs Act robbery is a crime of violence

under the elements clause of § 924(c)(3)(A), is unaffected by

Davis, Stokeling, and Barrett and remains binding on us in this

case") (internal citations omitted).  Accordingly, both Hobbs Act

robbery and murder in aid of racketeering are crimes of violence under the Elements Clause of Section 924(c).

Therefore, the Court did not sentence Defendant under the Residual Clause of Section 924(c) and the portion of the Petition based upon Davis is DENIED.

### 3. The Mitigating Role Adjustment Claim

Defendant claims that he is entitled to resentencing with a three-level decrease in offense level to reflect his "minor role and minimum participation" based on the retroactive application of Amendment 794 to the Sentencing Guidelines. (Pet. at ECF p. 8; see generally id. at 6-9.) These arguments make clear that Defendant seeks a sentence reduction (as compared to vacatur) based on the retroactive application of Amendment 794. "Such requests are properly made pursuant to 18 U.S.C. § 3582(c)(2) and should be analyzed accordingly." Pickett v. United States, No. 07-CR-0117, 2018 WL 10705821, at *3 (E.D.N.Y. Oct. 29, 2018) (collecting cases). "A court's power under 3582(c)(2) [ ] depends in the first instance on the [Sentencing] Commission's decision not just to amend the Guidelines but to make the amendment retroactive." Dillon v. United States, 560 U.S. 817, 826 (2010). It is well accepted that an amendment is given retroactive effect if it is listed in Section 1B1.10 of the Sentencing Guidelines. See United States v. Caceda, 990 F.2d 707, 710 (2d Cir. 1993) (declining to apply a certain Guidelines amendment retroactively

where it was not listed in Section 1B1.10(d)); see also Calderon v. United States, No. 02-CR-1082, 2016 WL 7495180, at *1 (S.D.N.Y. Dec. 15, 2016) (stating "[i]n order for a Sentencing Guideline amendment to apply retroactively under § 3582(c)(2), it must be listed in § 1B1.10 of the Guidelines."). Amendment 794 is not among those listed in § 1B1.10 of the Guidelines and therefore, it cannot be applied retroactively. See United States v. King, 813 F. App'x 690, 693 (2d Cir. 2020) (summary order); Pickett, 2018 WL 10705821, at *3 (collecting cases). Thus, Defendant is not entitled to relief under Section 3582(c).

Moreover, even if Defendant is not barred from raising this claim, the Court is not convinced that failing to apply Amendment 794 to Defendant's sentence entitles him to Section 2255 relief. Ultimately, "a defendant seeking to apply a post-sentencing clarifying amendment on collateral review must . . . demonstrate that the court's failure to consider his argument will result in a miscarriage of justice." Reed v. United States, No. 16-CV-1356, 2017 WL 5573151, at *7 (D. Conn. Nov. 20, 2017) (alteration in original) (quoting Cook v. United States, No. 89-CR-0346, 2006 WL 3333068, at *9 (S.D.N.Y. Nov. 15, 2006)). Here, the Court sentenced Defendant significantly below the suggested Guidelines range and the Probation Department's recommendation. Further, as discussed infra, Defendant declined a hearing to explore his role in the crimes, including his representation hat

he declined to shoot the Victims. (See Discussion § I.B.4, infra.)
Accordingly, even if Amendment 794 applies retroactively, and it
does not, Defendant's claim is not cognizable under Section 2255
because he has not shown that this Court's "failure to sentence
him as a minor participant was a fundamental defect that resulted
in a complete miscarriage of justice." Canales v. United States,
No. 13-CR-0298, 2018 WL 1936135, at *6 (E.D.N.Y. Apr. 24, 2018)
(quoting Sanchez v. United States, No. 89-CR-0305, 1993 WL 267310,
at *2 (S.D.N.Y. Jul. 13, 1993)).

4. Ineffective Assistance of Counsel Claims and the Court's Consideration of Defendant's Mental Health History

Defendant's claim of ineffective assistance of counsel
is two-fold:  first, he argues that counsel failed to adequately
present his mental health history to the Court at sentencing (Pet.
at ECF p. 11); second, he asserts that counsel failed to argue
that Defendant refused to shoot the Victims, which would have
entitled Defendant to a lower sentence (id. at ECF pp. 11-12, 14-
15 ¶¶ 2-5).[5] Defendant's ineffective assistance of counsel claims,
if not barred, are without merit.

_____

[5] To the extent asserted, the Court does not address whether
Defendant is entitled to relief based on actual innocence "given
his admissions in his plea agreement, at his guilty plea allocution
and at his sentencing," including his decision to forgo a hearing
regarding his involvement in the murders. Frazier v. United
States, No. 17-CR-0364, 2021 WL 111638, at *3 n.6 (S.D.N.Y. Jan.
12, 2021) (citation omitted) (declining to consider claims of
actual innocence where a petitioner does not assert actual

Claims of ineffective assistance of counsel are evaluated under the framework set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). "First, the defendant must show that counsel's performance was deficient," and second, "the defendant must show that the deficient performance prejudiced the defense." <u>Id.</u> Defendant's first claim, that counsel failed to present his mental health issues at sentencing, belies the record. Indeed, "[i]t is difficult to conceive how [Defendant] received deficient performance from his counsel or was prejudiced." <u>United States v. Dickinson</u>, No. 09-CR-6177, 2012 WL 4120378, at *2 (W.D.N.Y. Sept. 19, 2012). As recited in detail above, before and during sentencing, counsel fervently argued that Defendant was "an impressionable and troubled 19-year-old with the emotional age of a much younger teen ███████████████████████████████

███████████████████████████████████████████████

█████████  ██████  ██████  ███  ██  ██████  <u>see</u> Background § III, <u>supra</u>.) The Court acknowledged and considered these arguments when imposing its sentence. (<u>See</u> Background § III, <u>supra</u>.) Accordingly, the record clearly establishes that counsel thoroughly presented Defendant's mental health history to the

---

innocence as a basis for habeas relief and where his admissions in a plea agreement, at the guilty plea hearing, and sentencing foreclose the argument).

Court.[6]  On this basis, Defendant has not demonstrated deficient performance by counsel, no less prejudice, under Strickland and his claim of ineffective assistance of counsel is denied.  See, e.g., Dickinson, 2012 WL 4120378, at *2-3 (denying habeas petition where court found "the sentencing transcript demonstrates clearly that defense counsel argued strenuously on [defendant]'s behalf" and the court's imposition of "a drastically reduced sentence, well below the Guideline range" demonstrated no prejudice).

Similarly, the Court finds that counsel was not ineffective for failing to argue that Defendant did not shoot the Victims.  (See Pet. at ECF p. 14 ¶¶ 3-4.)  The Court was prepared to schedule a hearing to determine the scope of Defendant's involvement in the murders, including the representation that Defendant chose not to shoot the Victims.  (Sent'g Tr. at 34:21-35:23; see Background § III, supra.)  However, Defendant declined the opportunity:

> The Court:    Mr. Cabral, [Defense Counsel] being the excellent lawyer that he is, has told you [that] you can have a hearing on this. You can testify and you can disprove what you claim the Government is wrongly saying about your involvement with the shooting. Do you understand that?
>
> Defendant:    Yes, but I just concede.
>
> The Court:    You concede it.

---

[6] For the same reasons, Defendant is not entitled to habeas relief on the grounds that the Court failed to consider his mental health history at sentencing.

Defendant:  Yes.

The Court:  No one is forcing you to do this, are they?

Defendant:  No.

The Court:  Based on that I don't see any need for a hearing.

(Sent'g Tr. at 35:9-23.)  As such, counsel's conduct in declining to further argue that Defendant did not shoot the Victims -- at Defendant's request -- "did not fall 'below an objective standard of reasonableness.'"  Prelaj v. United States, No. 16-CR-0055, 2020 WL 3884443, at *7 (S.D.N.Y. July 9, 2020) (quoting Strickland, 466 U.S. at 688) (ineffective assistance of counsel claim failed where the defendant "himself informed the Court at sentencing that to proceed with sentencing rather than . . . to postpone sentencing to hold a Fatico hearing").

Even assuming Defendant did not decline the hearing, "[c]ourts within this circuit have repeatedly found that counsel's decision whether or not to request a Fatico hearing is a 'strategic [choice] that falls within the range of reasonable professional assistance.'"  Messina v. United States, No. 11-CR-0031, 2020 WL 4194533, at *19 (E.D.N.Y. July 21, 2020) (alteration in original) (quoting United States v. Peterson, 896 F. Supp. 2d 305, 318 (S.D.N.Y. 2012)) (collecting cases).  Thus, because Defendant has not made a showing that counsel's decision to decline (at Defendant's request) a hearing was "unreasonable, ineffective or

resulted in prejudice by changing the sentencing outcome, the court does not second-guess counsel's strategic choice." Id. Finally, as stated, Defendant was sentenced significantly below the Guidelines range and the Probation Department's recommendation. Therefore, Defendant has not shown any prejudice arising out of counsel's performance at sentencing.

Accordingly, Defendant's claims of ineffective assistance of counsel do not provide a basis for relief under Section 2255 and are DENIED.

## II.   Defendant's Motion for Compassionate Release

The Court turns to Defendant's Motion for compassionate release.  Defendant argues that the spread of COVID-19 among the prison population, including a severe outbreak at USP Lompoc Medium ("USP Lompoc"), his positive institutional record, and certain medical conditions, constitute extraordinary and compelling reasons that justify his release.  (See Mot.; see also Dec. 15, 2020 Ltr., ECF No. 217; Jan. 4, 2021 Ltr., ECF No. 218; Jan. 22, 2021 Ltr., ECF No. 219.)  The Government opposes the motion arguing that none of Defendant's medical conditions place him at high risk of complications from COVID-19 and the Section 3553(a) factors counsel against release.  (See generally Gov't Mot. Opp., ECF No. 212.)  For the reasons that follow, the Motion is DENIED without prejudice.

22

A. <u>Facts Specific to the Compassionate Release Motion</u>

Defendant has been detained for approximately nine years, is 35 years old, and suffers from ████ ████ ████ ████████████ (Mot. at ECF p. 1.) As stated, he is currently incarcerated at USP Lompoc, a medium security penitentiary, and is expected to be released on March 27, 2036. See <u>Find An Inmate</u>, BOP.gov, www.bop.gov/inmateloc/index.jsp (last visited Feb. 5, 2021). While incarcerated, Defendant received his GED (Inmate Education Data, Mot. at ECF p. 6), completed a variety of instructive courses aimed at personal development and growth (<u>see</u> <u>id.</u>; <u>see also</u> Jan. 22, 2021 Ltr.), and has two minor infractions on his record (<u>see</u> Dec. 15, 2020 Ltr.; Inmate Discipline Data, Gov't Mot. Opp., Ex. 1, ECF No. 212-1).

B. <u>Legal Standard</u>

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." <u>United States v. Rabuffo</u>, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting <u>United States v. Gotti</u>, No. 02-CR-0743, 2020 WL 497987, at *1 (S.D.N.Y. Apr. 6, 2020)). As relevant here, courts have discretion to grant compassionate release when there are (1) "extraordinary and compelling reasons" that warrant a sentence reduction, (2) the sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) the sentence reduction "is supported by the factors set

forth in 18 U.S.C. § 3553(a)." United States v. Canales, No. 16-CR-0212, 2020 WL 2319294, at *2 (S.D.N.Y. May 9, 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

District courts may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." United States v. Brooker, 976 F.3d 228, 237 (2d. Cir. 2020); see id. at 236 (finding that "[b]ecause Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants [as compared to those brought by the BOP], Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling"). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" Id. at 237-38 (quoting 28 U.S.C. § 994(t)) (emphasis and alteration in original).

Even where extraordinary and compelling reasons exist, the Court must "consider all the Section 3553(a) factors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. Davies, No. 17-CR-0057, 2020 WL 2307650, at *2 (E.D.N.Y.

24

May 8, 2020) (citation omitted).  A defendant "bears the burden of showing that his release is justified."  United States v. Patterson, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020).

### C. Analysis

The parties do not dispute that Defendant exhausted his administrative remedies.  The Court thus considers the merits of the Motion.

Here, Defendant has not demonstrated that extraordinary and compelling circumstances warrant a reduction of his sentence. The Court has reviewed Defendant's submissions and recognizes that he understandably fears contracting COVID-19 while incarcerated. However, "[s]uch a generalized fear, . . . does not constitute an extraordinary and compelling reason for compassionate release." United States v. Black, No. 12-CR-0103, 2020 WL 4192243, at *4-5 (W.D.N.Y. July 21, 2020) (collecting cases).  Moreover, Defendant's motion differs from many the Court has received because he has contracted and recovered from COVID-19.  (See, e.g., Jan. 4, 2021 Ltr.)  "Other courts have denied compassionate release requests on this basis, and the Court is persuaded by their analyses."  United States v. Mateus, No. 14-CR-0504, 2020 WL 5096062, at *4 (S.D.N.Y. Aug. 28, 2020) (collecting cases). Additionally, the Court is well-aware that Defendant suffers from certain underlying medical conditions.  However, he does not argue

that "his medical care has been hampered by the pandemic."  Id.
Further, acknowledging Defendant's representations regarding an
outbreak of COVID-19, according to the information maintained by
the BOP for USP Lompoc, as of February 4, 2021, 1 inmate and 2
staff members are listed as "positive" for COVID-19, 2 inmates
have died from COVID-19, and 207 inmates and 42 staff members are
listed as "recovered" from the virus.  See COVID-19 Cases, BOP.gov,
http://www.bop.gov/coronavirus/ (last visited Feb. 5, 2021).  On
this basis, the Motion must be denied.

Finally, the Court has considered the Section 3553(a)
factors and finds they weigh against release.    See
§ 3582(c)(1)(A)(i).  One of the factors arguably favor an early
release, "history and characteristics of the defendant," but it is
"outweighed by the combined force of several other factors."
United States v. Walter, No. 18-CR-0834, 2020 WL 1892063, at *3
(S.D.N.Y. Apr. 16, 2020) (citing Section 3553(a)).  Specifically,
"[t]he nature and circumstances of his offense of conviction -- to
which he pleaded guilty -- are serious."  United States v. Asaro,
No. 17-CR-0127, 2020 WL 1899221, at *7 (E.D.N.Y. Apr. 17, 2020).
As the Court stated during sentencing, Defendant participated in
the "senseless" and "deliberately planned" execution-style murders
of the Victims that resulted in "incalculable" grief.  (Sent'g Tr.
at 38:4-16.)  For ten years following the murders, Defendant
remained at liberty and "was able to go about his business, have

children, lead a life, and move on," but did not rehabilitate himself and did not express remorse. (Id. at 39:18-25.) Moreover, the Court varied downwardly to sentence Defendant below the advisory Guidelines range and Probation's recommendation (see Background § III, supra) so he could "take advantage of whatever opportunities are presented to him in jail" (Sent'g Tr. at 40:18-19).

While the Court is pleased that Defendant has taken significant steps towards rehabilitation, the Court "intended then, and intends now, for [Defendant] to serve the totality of that sentence." Mateus, 2020 WL 5096062, at *4. Accordingly, the original sentence remains sufficient, but not greater than necessary, to "reflect the seriousness of the offense" and "provide just punishment for the offense."[7] 18 U.S.C. § 3553(a)(2)(A).

---

[7] To the extent not already pursued, Defendant may seek relief in the form of a furlough under 18 U.S.C. § 3622 or home confinement as contemplated in the CARES Act, Pub. L. No. 116-136 (2020), and the Attorney General's April 3, 2020 memorandum to the BOP. The decision to grant that relief, including relief in the form of a directive that the BOP transfer Defendant to a facility closer to his family, is reserved to the discretion of the BOP. See United States v. Bass, No. 10-CR-0166, 2020 WL 2831851, at *6 n.7 (N.D.N.Y. May 27, 2020) ("The Court does not have the authority, for instance, to compel BOP to transfer [Defendant] to another facility . . . .").

CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendant's Petition pursuant to 28 U.S.C. § 2255 (ECF No. 173) is DENIED and the Clerk of the Court is respectfully directed to mail a copy of this Order to the pro se Defendant; terminate the pending motions at ECF Nos. 173 and 182; and close the corresponding civil case; and

IT IS FURTHER ORDERED that Defendant's Motion for compassionate release (ECF No. 199) is DENIED without prejudice to renew; and

IT IS FURTHER ORDERED that a certificate of appealability is DENIED because Defendant has not made a substantial showing that he was denied a constitutional right. See 28 U.S.C. § 2253(c)(2).

SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: February  5  , 2021
       Central Islip, New York